UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

NUAIRE, INC.,

      Plaintiff,                      **Memorandum of Law & Order**

v.                                       Civ. No. 11-1249

MERRILL MANUFACTURING CORP.,

      Defendant.

Jonathan M. Bye and Anthony N. Kirwin, Lindquist & Vennum, P.L.L.P., Counsel for Plaintiff.

Lenae M. Pederson, Michael D. Hutchens, Kathleen M. Ghreichi, John E. Radmer, Meagher & Geer, P.L.L.P., Counsel for Defendant.

## I. Introduction

This matter is before the Court on Defendant Merrill Manufacturing Corporation's Motion for Partial Summary Judgment. [Docket No. 13.] The Court heard oral argument on April 6, 2012.

## II. Background

### A. The Dispute

Plaintiff NuAire, Inc. ("NuAire") manufactures and sells laboratory equipment for hospitals and universities. Defendant Merrill Manufacturing

1

Corporation ("Merrill") manufactures and sells custom wire-form component parts.  For many years, Merrill made stainless steel "door catches," which it sold to NuAire for installation on incubators.  The material used for the door catches on the incubators was crucial because they are exposed to water while the incubator is in operation.  This lawsuit arises out of a single December 2009 shipment of approximately one thousand door catches that were not made of stainless steel.  It is undisputed that those door catches were made of basic steel, a material susceptible to rust.  The nonconforming door catches began to rust, and incubators began to leak.  NuAire now sues Merrills for damages caused by the rusted catches.

B.     **Business Relationship between NuAire and Merrill**

NuAire has been buying incubator door catches from Merrill since 1993.  When Merrill first began to sell door catches to NuAire, it provided NuAire with quotations which provided pricing for items based on quantities ordered.  The footer of each quotation stated:

> All orders from Customer for all or any portion of the goods described above shall not be binding upon [Merrill] until accepted in writing by an authorized officer of [Merrill] at [Merrill's] home office in Merrill, WI and shall be subject to Customer agreeing to all of [Merrill's] standard terms and conditions of sales.

(Pederson Decl. [Docket No. 16], Ex. E.) Merrill sent NuAire quotations for door catches in 1998, 2002, and 2005. Each quotation included the same language. The parties agree that these quotations did not constitute "offers."

Transactions between the parties would generally begin with a purchase order sent by NuAire to Merrill. The reverse side of NuAire's purchase orders contains terms and conditions, but it is undisputed that Merrill never received a copy of those terms and conditions because only the front side of NuAire's purchase orders was transmitted to Merrill.

Upon receipt of a purchase order from NuAire, Merrill would then send an acceptance to NuAire. Sometimes, the acceptance would be a separate document; at other times, Merrill would fax the purchase order back to NuAire with a handwritten acceptance. Before 2006, Merrill would also mail NuAire an acknowledgment form which a contained pre-printed "Terms of this Offer to Sell" in a small font on the reverse side of the form. (See Pederson Decl., Ex. N.) One of the terms listed on that form stated that Merrill's liability for nonconforming goods

> SHALL IN NO EVENT EXCEED THE PURCHASE PRICE OF [THE NONCONFORMING GOODS] AND ALSO SHALL BE LIMITED TO, AT SELLER'S OPTION, REPLACING OR REPAIRING OR

>ISSUING A CREDIT OR REFUND FOR THAT PART OF THE PURCHASE PRICE OF SUCH GOODS . . .

(Id. ¶ 20.) The terms further stated:

>SELLER SHALL HAVE NO LIABILITY FOR ANY COSTS OR EXPENSES OF DISASSEMBLY, REMOVAL, REASSEMBLY OR REINSTALLATION OF ANY DEFECTIVE, REPAIRED OR REPLACEMENT GOODS OR OF FINISHING THE REINSTALLATION THEREOF.

(Id.) Merrill's "Terms of this Offer to Sell" also disclaimed all warranties. Forms with these terms were sent by Merrill to NuAire until 2006, when Merrill changed to a system in which acknowledgments were sent automatically via fax or email. The acknowledgments sent by the new system did not include the "Terms of this Offer to Sell." As a result, the documents memorializing the 29 agreements which Merrill and NuAire consummated between 2006 and 2009 did not include language purporting to limit Merrill's liability or disclaim warranties.

### C. Purchase Order No. 153274

On November 5, 2009, NuAire emailed to Merrill Purchase Order No. 153274 ("Purchase Order"). (Mariette Aff., Ex. A.) The Purchase Order requested 1,000 incubator door catches, made in accordance with particular specifications, including the requirement that they be made of "304" stainless

4

steel. The Purchase Order did not contain references to additional terms or conditions.

Merrill responded to the Purchase Order on the next day, faxing it back to NuAire with the words "Price o.k." and "Delivery o.k." handwritten on it. (Id., Ex. B.) It is not clear whether Merrill sent an electronic acknowledgement, but there is no dispute that any such acknowledgement would not have included the "Terms of this Offer to Sell." The only other documents produced with respect to the transaction are Merrill's "picking ticket" and invoice, which indicated that the door catches in the shipment were made of stainless steel. (Id., Exs. C, D.) Neither document set out any terms or conditions.

Without verifying the material of the door catches, NuAire installed them in its incubators. NuAire began receiving complaints about leaky incubators in December 2010. NuAire then contacted Merrill, and Merrill informed NuAire that the door catches in the December 2009 shipment were not made of stainless steel. NuAire states that it has so far incurred $487,000 in replacing 104 incubators which were assembled with rust-susceptible door catches. It expects to spend another $307,000 replacing 61 others. NuAire filed this action in May 2011, alleging breach of contract (Count I), breach of express warranty (Count II),

breach of implied warranty of fitness (Count III), breach of implied warranty of merchantability (Count IV), and reckless misrepresentation (Count V).

By order of this Court, discovery in this matter was bifurcated into two phases. (Pretrial Scheduling Order [Docket No. 12].) The parties were ordered to first "conduct immediate discovery relating to liability, including Merrill's defense that NuAire is precluded from recovering incidental or consequential damages, and then move the Court for partial summary judgment on that issue." (Id. at 1.) Pursuant to that order, Merrill has now brought this motion for partial summary judgment. Merrill concedes that it breached its contract with NuAire but argues that its liability should be limited in accordance with "Terms of this Offer to Sell." In other words, Merrill contends that consequential damages are precluded, that NuAire has waived its warranty claims, and that Merrill's liability is therefore limited to the price of the nonconforming door catches. Merrill also argues that it is entitled to summary judgment on NuAire's reckless misrepresentation claims.

**III. Discussion**

    **A. Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no genuine dispute as to any material fact. Id. at 323. Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be counted. Id. "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

### B.     Applicability of Merrill's "Terms of this Offer to Sell"

Merrill argues that the "Terms of this Offer to Sell" which appeared on its printed acknowledgment forms prior to 2006 apply to the 2009 transaction at issue here.  The parties agree that Minnesota law applies to this diversity action and that the disputed transaction is covered by Minnesota's Uniform Commercial Code ("UCC"), Minn. Stat. § 336.1-101 et seq.[1]  Merrill argues first that this case is covered by UCC § 2-207, which applies to a "battle of the forms," and that its acceptance of NuAire's Purchase Order should be understood to have incorporated the liability-limiting language of its "Terms of this Offer to Sell."  Merrill also argues that those terms supplement the agreement because they are part of a course of dealing between Merrill and NuAire.  NuAire responds that there is no "battle of the forms" here, that the terms advanced by Merrill cannot be considered part of the parties' course of dealing, and that the additional terms which Merrill seeks to apply are otherwise inapplicable or unenforceable.

#### 1.  UCC § 2-207(2)

The parties agree that the "Terms of this Offer to Sell" were not printed on any document exchanged in the transaction in question or any other transaction

---

[1] Subsequent citations refer directly to the relevant UCC section.

after 2006. Merrill nonetheless frames the issue in this case as one of a "battle of the forms" under UCC § 2-207. Under that section, "terms [in an acceptance] additional to or different from those offered or agreed upon" become "part of the contract," if the contract is "[b]etween merchants," and unless the offer "expressly limits acceptance to the terms of the offer," the additional terms "materially alter" the contract, or an objection is raised "within a reasonable time after notice of them is received." See UCC § 2-207(1)-(2). "For a 'battle of the forms' to arise and trigger the provisions of § 2-207, there must be conflicting forms to begin with, each of which satisfies the common-law or statutory requirements for an offer." Litton Microwave Cooking Prods. v. Leviton Mfg. Co., Inc., 15 F.3d 790, 794 (8th Cir. 1994).

Merrill contends that its "Terms of this Offer to Sell" were a part of its acceptance in the transaction at issue here, though those terms do not appear in any document exchanged in the transaction at issue. Merrill cites three cases in support of its position, but crucial factual differences distinguish each of those cases from this one.

In Nordyne, Inc. v. Int'l Controls & Measurements Corp., 262 F.3d 843, 846 (8th Cir. 2001), the Court reasoned that, in spite of the general rule that a

manufacturer's quotation is not an offer, the particular quotation at issue constituted an offer under Missouri law. Id. A forum selection clause in that quotation was therefore determined to be incorporated into the offer. Id. Here, the parties agree that the quotations provided by Merrill were not offers. In any event, the terms that Merrill seeks to incorporate were not in its quotations, but were rather in acknowledgement forms pertinent to transactions occurring at least three years before the transaction at issue here.

In CFMOTO Powersports Inc. v. NNR Global Logistics USA, Inc., Civ. No. 09-2202 (JRT/JJK), 2009 WL 4730330, at *2-*3 (D. Minn. Dec. 4, 2009), this Court incorporated into an agreement one party's "Terms and Conditions of Service" which purported to govern transactions between the parties, were provided at the time of the transaction, and to which the other party had explicitly assented at the time of the transaction. Here, there is no evidence that NuAire ever expressly consented to being governed by Merrill's "Terms of this Offer to Sell" or that those terms were provided at the time of the transaction. Moreover, the very title of Merrill's "Terms of this Offer to Sell" itself indicates that those terms were meant to apply to a particular offer ("this Offer to Sell"), not to future transactions between the parties.

Finally, in General Mills Operations, LLC v. Five Star Custom Foods, Ltd., 789 F. Supp. 2d 1148, 1157-58 (D. Minn. 2011), this Court concluded that terms and conditions contained on the reverse side of a party's purchase order were incorporated into the transaction at issue. That case bears little resemblance to this one, however, because here there is no assertion that the "Terms of this Offer to Sell" were printed on or referenced in any document exchanged in the 2009 transaction.

Merrill's analysis puts the cart before the horse, presupposing that the "Terms of this Offer to Sell" was included in its acceptance of NuAire's Purchase Order. Those terms were not printed on any document related to the transaction involving the nonconforming door catches. The cases cited by Merrill do not support the proposition that its acceptance should be interpreted to include terms which, by Merrill's own admission, had not been sent to NuAire in over three years. There simply is no evidence that there were "conflicting forms to begin with" such that a "battle of the forms" could have ensued. Litton Microwave Cooking Prods., 15 F.3d at 794.

## 2. UCC § 2-207(3)

Merrill argues that the parties' course of dealing incorporated the "Terms of this Offer to Sell" and that those terms therefore should be considered to have been "supplementary terms" to the agreement. A course of dealing "is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." UCC § 1-303(b). Under UCC § 1-303(d), a course of dealing "may supplement or qualify the terms of [an] agreement."

> UCC § 2-207(3) provides:
>
> Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

Courts are split on the question of whether the term "supplementary terms" referenced in UCC 2-207(3) encompass terms implied by a course of dealing. As the Eighth Circuit has explained:

> Courts and commentators have read § 2–207(3)'s reference to "supplementary terms" differently. Compare Dresser Indus., Inc. v. Gradall Co., 965 F.2d 1442, 1451 (7th Cir. 1992) (holding that "all of

12

> the U.C.C.'s provisions should be used in discerning the terms of a contract under § 2–207(3), including those provisions that allow us to examine the parties' performance."); 2 W. Hawkland, Uniform Commercial Code Series § 2–207:04, at 109–10 (1990) (arguing that parties' course of conduct should be considered under § 2–207(3)), with Itoh, 552 F.2d at 1237 (limiting "supplementary terms" to those supplied by the stock "gap-filler" provision of Article Two); 1 J. White & R. Summers, Uniform Commercial Code, § 1–3 at 45 (3d ed. 1988) (asserting that "supplementary terms" should be limited to UCC's explicit "gap-fillers").

PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C., 225 F.3d 974, 981 n.4 (8th Cir. 2000).

In Nitrogen Fertilizer, the Court assumed "*arguendo* that supplementary terms include terms arrived at through a course of dealing" but never so held. Id. The Court concluded that, in any event, the course of dealing between the parties was not sufficient to establish the terms sought by the party asserting them. Id. The Court held that "the fact that [the defendant had] repeatedly sent its customer acknowledgment form to [the plaintiff did] not establish a course of dealing; the multiple forms merely demonstrated [the defendant's] desire to include [a particular] term of the contract." Id.

While Merrill cites Nitrogen Fertilizer as authority for its assertion that the parties' course of dealing may supplement the December 9, 2009 transaction, that case seems to foreclose its argument. Merrill, like the defendant in Nitrogen

13

Fertilizer, "repeatedly sent its customer [NuAire] an acknowledgment form." Id. In Nitrogen Fertilizer, the Court held that "[c]ourse of dealing analysis is not proper in an instance <u>where the only action taken has been the repeated delivery of a particular form by one of the parties</u>." Id. (emphasis added) (quoting In re CFLC, Inc., 166 F.3d 1012, 1017 (9th Cir. 1999)); see also Step–Saver Data Sys., Inc. v. Wyse Tech., 939 F.2d 91, 104 (3d Cir. 1991). The Court cannot supplement the agreement as Merrill requests; to do so would be contrary to the holding in Nitrogen Fertilizer.

The Court further notes that the case for supplementing the agreement at issue in Nitrogen Fertilizer was stronger than it is here. The acknowledgment forms at issue in Nitrogen Fertilizer were contemporaneous with the contested transaction. Here, Merrill had not sent an acknowledgment form containing the "Terms of this Offer to Sell" for a period of three years before the 2009 transaction, even as the parties entered into nearly 30 contracts during that time. Thus the parties' course of dealing for the three years prior to the Merrill's shipment of nonconforming goods simply did not include any reference to the terms Merrill now seeks to apply.

14

The Court concludes that Merrill's acceptance of NuAire's Purchase Order did not include the "Terms of this Offer to Sell" and those terms were not otherwise incorporated into the agreement by way of the parties' course of dealing.[2] The Court therefore cannot grant Merrill's request that NuAire's recovery of direct damages be capped at the cost of the nonconforming goods, nor can it dismiss NuAire's warranty claims.

C.     **NuAire's Misrepresentation Claim**

Merrill argues that NuAire cannot establish a prima facie case of reckless misrepresentation. To prove such a claim, NuAire must show that

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.

Zutz v. Case Corp., 422 F.3d 764, 770-71 (8th Cir. 2005) (citation omitted).

Merrill argues that NuAire's misrepresentation claim was not pleaded with sufficient particularity under Rule 9(b) of the Federal Rules of Civil

---

[2] Because the Court concludes that the terms did not apply, the Court need not address whether they would have materially altered the agreement between the parties or whether they were unreadable or unconscionable.

Procedure.  To meet the Rule 9(b) standard, the facts alleged must "give Defendants notice of what conduct is complained of and [allow them] to prepare a defense to such claim of misconduct."  <u>First Presbyterian Church of Mankato, Minn. v. John G. Kinnard & Co.</u>, 881 F. Supp. 441, 445 (D. Minn. 1995) (citation omitted).  In its complaint, NuAire stated that Merrill falsely represented that "the catches were stainless steel."  In response to Merrill's interrogatories, NuAire has stated that Merrill "represented in the documents relating to the sale at issue that the catches it delivered to NuAire would be, and were, stainless steel when, in fact, they were not."  Merrill argues that these statements fail to sufficiently state "who made the representation that the door catches were made of stainless steel, or when and where such a representation was made."

By this point in the litigation, however, NuAire's allegations are plain enough.  There are only a handful of "documents relating to the sale at issue," and each of them references stainless steel.  The Purchase Order had a drawing attached which specified that the required material was "304," which the parties agree signifies stainless steel. (Mariette Aff., Ex. A.)  Merrill returned the Purchase Order with the words "Price o.k." and "Delivery o.k." written on it. (<u>Id.</u>, Ex. B.)  The picking ticket and invoice provided by Merrill with the

16

shipment of nonconforming door catches both stated that the door catches were "TYPE 302/304 SS WIRE X COIL."  (Id., Exs. C, D.)  The Purchase Order acceptance, picking ticket, and invoice were each undisputedly authored by Merrill employees on the dates specified on the documents.  To the extent that NuAire's complaint was too vague, its interrogatory answers have constructively amended and clarified the claim.  NuAire's allegations give Merrill "notice of what conduct is complained of" and allow Merrill "to prepare a defense to such claim of misconduct."  First Presbyterian Church, 881 F. Supp. at 445.

Merrill further argues that NuAire cannot establish that "there was a false representation by a party of a past or existing material fact susceptible of knowledge."  See Zutz, 422 F.3d at 770-71.  Merrill focuses on the fact that the door catches had not yet been manufactured when it accepted NuAire's Purchase Order.  Thus any statement that the door catches would be made of stainless steel pertained to a future act, not a "past or existing material fact."  Id. Generally, "a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented action or event did not take place."  JCA P'ship v. Wenzel Plumbing & Heating, Inc., 978 F.2d 1056, 1062 (8th Cir. 1992) (citation omitted).

Merrill's shipment of nonconforming door catches, after it had represented that they would be made of stainless steel, created more than a misrepresentation of a future act.  Viewing the evidence in the light most favorable to NuAire, Merrill was not merely silent on the question of the materials which it used to fill NuAire's order.  Rather, documents authored by Merrill contemporaneously with the shipment of the door catches, stated that they were made of stainless steel.  Merrill's invoice and picking ticket, both dated December 21, 2009, made representations about the <u>existing</u> condition of the door catches.  Because NuAire's misrepresentation claim are sufficiently particular under Rule 9(b) and satisfy the first element of a reckless misrepresentation claim, the Court will deny Merrill's motion for summary judgment on that claim.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment is **DENIED.**

Dated:  August 6, 2012						s/ Michael J. Davis
								Michael J. Davis
								Chief Judge
								United States District Court